The Honorable Ricardo S. Martinez

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| WESTMARK DEVELOPMENT CORPORATION, a Washington corporation, and TRIZEC INVESTMENT CORPORATION, a Washington corporation,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF BURIEN, a municipal corporation,<br><br>Defendant. | No. C08-1727 RSM<br><br>**PLAINTIFFS' MOTION FOR ATTORNEYS FEES**<br><br>**Note on Motion calendar: Monday, November 18, 2013**<br><br>[Oral Argument Requested] |

## I. INTRODUCTION

This litigation has been proceeding since 1996. The only remaining issue is the Plaintiffs' claim for attorney's fees pursuant to 42 U.S.C. § 1988.

Plaintiffs Westmark Development Corporation and Trizec Investment Corporation (hereinafter "Westmark" or "Plaintiffs") file this motion for attorneys fees pursuant to the schedule set forth in the Court order.

PLAINTIFFS' MOTION FOR ATTORNEYS FEES
(C08-1727 RSM) - 1

GROEN STEPHENS & KLINGE LLP
10900 NE 8th Street, Suite 1325
Bellevue, WA 98004
(425) 453-6206

1         The United States Court of Appeals for the Ninth Circuit has resolved most of the

2 issues concerning Burien's liability for attorneys fees. In its Memorandum decision, the

3 Ninth Circuit held that after the favorable state court determination,

> At that point, Westmark was eligible to recover attorney's fees on its § 1983 claim, provided two conditions were met: (1) its federal constitutional claim is "substantial" under *Hagans v. Lavine*, 415 U.S. 528, 537-38 (1974); and (2) its state law claims and its federal constitutional claim arise out of a "common nucleus of operative fact" under *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966). *See Gerling Global*, 400 F.3d at 808.
> Both of these requirements are met here.

Memorandum decision at 2-3, January 7, 2013 (copy provided for convenience as Appendix A).

        The Ninth Circuit further ruled:

> The second condition is met because Westmark's state law claims arise out of the same common nucleus of operative fact as its federal substantive due process claim (namely, Burien's improper conduct during the permitting process for Westmark's development project), and Westmark originally attempted to litigate those claims in the same judicial proceeding.

*Id*. at 3.

        The Ninth Circuit recognized that the "special circumstances" exception remains to be addressed. That will be discussed below. It will be shown there are no special circumstances that warrant denial of fees.

        The Ninth Circuit also cautioned that fees are available only for work that involved similar facts, legal theories, and relief sought. *Id*. at 4. As the Court will see, Westmark has taken the most conservative approach and is only seeking fees related to the substantive due process claim itself, and the most closely related state law claim which is the intentional

PLAINTIFFS' MOTION FOR ATTORNEYS FEES
(C08-1727 RSM) - 2

GROEN STEPHENS & KLINGE LLP
10900 NE 8th Street, Suite 1325
Bellevue, WA 98004
(425) 453-6206

interference with business expectancy claim. That claim involves the same facts, and is based on the same improper conduct, and same damages as the substantive due process claim. Likewise, the legal elements required for the intentional interference claim include showing improper conduct and improper purposes, just as the substantive due process claim also focuses on the arbitrary conduct where Burien tried to kill the project, not for legitimate regulatory purposes, but for improper purposes of trying to appease a local politician and to keep "apartment people" out of the city.

## II. PROCEDURAL BACKGROUND

Westmark has consistently alleged that Burien violated Westmark's substantive due process rights by arbitrarily and capriciously using its governmental power to delay and attempt to completely block a multi-family development project. *See* Amsbary Decl. in Supp't of Plfs' Second Mot. for Part. Summ. J. (Dkt. #57), Ex. A (Second Am. Compl.), ¶¶ 3.1-3.4, 3.8-3.11, 3.20-3.21, 4.1-4.23, and 8.4; Ex. B (Am. Compl.), ¶¶ 7, 17-20, 22-26. Burien's purpose for singling out and attempting to thwart Westmark's project was not for legitimate regulatory purposes, but was for political purposes – including appeasing a state legislator who lived adjacent to the project site. Amsbary Decl., Ex. B, ¶ 20. These allegations were also the basis for the state law tort claim that Burien improperly interfered with Westmark's business expectancy.

Trial on all claims was originally scheduled to begin in March 1998 in Snohomish County Superior Court. However, shortly before trial, the parties reached a settlement. Pending motions for summary judgment were cancelled and the trial date was stricken. *See* Amsbary Decl., Ex's C, D, and E (letters between counsel and notice to strike trial date).

PLAINTIFFS' MOTION FOR ATTORNEYS FEES
(C08-1727 RSM) - 3

GROEN STEPHENS & KLINGE LLP
10900 NE 8th Street, Suite 1325
Bellevue, WA 98004
(425) 453-6206

1    Unfortunately, the settlement fell apart.  Westmark filed a second lawsuit ("*Westmark II*") seeking to enforce the settlement.  The Washington Court of Appeals in *Westmark II* held that an enforceable settlement agreement had been reached between Westmark and Burien. *City of Burien v. Westmark Dev. Corp.*, Wash. Ct. App. No. 45562-1-I, noted at 103 Wn. App. 1037 (2000).  The appellate court remanded *Westmark II* back to the trial court to determine if Burien breached the agreement.  *Id*.

As *Westmark II* proceeded toward trial on the breach issue, Burien disclosed that the 1998 settlement had been approved by the City Council in executive session, rather than an open public meeting.  This meant the settlement violated Washington's Open Public Meetings Act, chapter 42.30 RCW, and was void as a matter of law.  Because of this deficiency, the trial court was compelled to declare the original settlement void.  *See* Amsbary Decl., Ex. A ¶¶ 5.8-5.11; Ex. B, ¶ 9 (Dkt. #57); *see also* Burien's Answer & Affirm. Defs., ¶ 9 (Dkt. #53).

Having voided the settlement, the state trial court exercised its equitable power and allowed Westmark to reopen its original case filed in 1996.  *See* Amsbary Decl., Ex. A, ¶ 5.11 (Dkt. #57).  Accordingly, Westmark filed its amended complaint and retained its original causes of action against Burien, including its substantive due process claim.  However, Westmark added individual defendants who previously were not included in the original lawsuit.

One of the new defendants removed the case to federal court based on federal question jurisdiction over the § 1983 claim.  *See* Notice of Removal, W.D. Wash. No. C04-2243 (Dkt. #1). On December 8, 2004, the District Court, acting *sua sponte*, remanded the state law claims back to state court, but retained jurisdiction over the § 1983 claim.  *See* Order Declining Supplemental Jurisdiction, Remanding State Claims, and Staying § 1983 Federal

PLAINTIFFS' MOTION FOR ATTORNEYS FEES
(C08-1727 RSM) - 4

GROEN STEPHENS & KLINGE LLP
10900 NE 8th Street, Suite 1325
Bellevue, WA 98004
(425) 453-6206

Claim, W.D. Wash. No. C04-2243 (Dkt. #30). The District Court then stayed the § 1983 claims pending resolution of the state law claims in state court. *Id*.

The case proceeded in state court and resulted in a jury verdict in favor of Westmark for $10,710,000. The Court of Appeals affirmed. *See Westmark Dev. Corp. v. City of Burien*, 140 Wn. App. 540 (2007). The Washington Supreme Court denied review. *Westmark Dev. Corp. v. City of Burien*, noted at 163 Wn.2d 1055 (2008). The mandate issued on September 12, 2008, and a satisfaction of judgment was filed on September 19, 2008, thus bringing the state court proceedings to a close.

Pursuant to a tolling agreement, Westmark then re-opened its substantive due process litigation against Burien. *See* Amsbary Decl., Ex. B (Dkt. #57). In re-opening this phase of the litigation, Westmark has been express in explaining that it is not seeking additional damages or any other relief. Rather, Westmark is seeking only its attorney's fees under 42 U.S.C. § 1988. *Id*., Ex. B., ¶ 3.

### III. ARGUMENT

**A.  The Intentional Interference Claim Is Closely Related to the Substantive Due Process Claim**

As mentioned above, Westmark is only seeking the fees that furthered the litigation with respect to the intentional interference claim. While other state law claims may be argued to also be sufficiently related, Westmark is taking the most conservative approach and focusing only on the intentional interference claim. That claim, along with the substantive due process claim, was always the primary legal theory being pursued by Westmark and was the focus of the trial that was eventually held in 2005. The intentional interference claim is properly the subject of the fee award.

PLAINTIFFS' MOTION FOR ATTORNEYS FEES
(C08-1727 RSM) - 5

GROEN STEPHENS & KLINGE LLP
10900 NE 8th Street, Suite 1325
Bellevue, WA 98004
(425) 453-6206

As the Court will see, significant effort has been taken to segregate the time and conservatively include only time related to the substantive due process claim and the intentional interference claim.

Westmark's section 1983 claim and pendent state tort intentional interference claim were based on the same operative set of facts: Burien's attempts to delay and ultimately thwart Westmark's development project. Burien used its regulatory power to delay and attempt to thwart the project – *not to further legitimate regulatory interests*, but to appease a state legislator who lived next to the project and did not want the property to be used for an apartment building. *See* Amsbary Decl., Ex. F, pp. 1373-82; Ex. G, pp. 2061-63; Ex. H, p. 1093 (Dkt. #57) (state court trial testimony of Hempelmann, Sayani, and Richert, respectively).[1] Although the property was zoned for multi-family housing, Burien did not want "apartment people" in its town and therefore tried to kill the project. *Id.*, Ex. F, pp. 1406-07. Not wanting "apartment people" and seeking to appease a state legislator are not legitimate regulatory purposes.

Not only did Burien act for improper purposes – *i.e.*, purposes that do not advance a legitimate state interest – but Burien also used an illegal means to achieve that purpose. Rather than processing Westmark's application through the normal process, Burien singled out the project and sought to kill it by refusing to act. *See id.*, Ex. I (Interlocal Agreement), Ex. J, ¶ 3.9 (Amendment to Interlocal Agreement). Such government conduct is an abuse of power, unrelated to any legitimate regulatory purpose, that violates Westmark's right to substantive due process.

---

[1] John Hempelmann served as Westmark's attorney during the 1990's. Nizar Sayani is President of Westmark Development Corp. and Chairman of Trizec Investment Corp. Roger Richert served as Westmark's architect for the Emerald Pointe project that is central to this dispute.

PLAINTIFFS' MOTION FOR ATTORNEYS FEES
(C08-1727 RSM) - 6

GROEN STEPHENS & KLINGE LLP
10900 NE 8th Street, Suite 1325
Bellevue, WA 98004
(425) 453-6206

These **same operative facts** formed the tortious interference claim and were proven at trial. After Westmark's jury trial, Division I of the Court of Appeals affirmed the verdict and summarized as follows

> Here, Westmark alleged that Burien acted for an **improper purpose** by singling out Emerald Point because of its **opposition to apartment dwellers** and its **desire to appease a state representative** who lived near the development site. Similarly, the City of Seattle in *Pleas* acted for an improper purpose by singling out a particular development in order to appease a neighborhood group. Here, Westmark alleged that Burien improperly delayed its revised application. Similarly, in *Pleas* the court found that Seattle's **improper means** was **"arbitrarily delaying"** the developer's project. The facts in *Pleas* are sufficiently analogous to the facts in this case. We affirm.

*Westmark*, 140 Wn. App. at 563-64 (emphasis added) (citing *Pleas v. City of Seattle*, 112 Wn.2d 794 (1989)). The appellate court further ruled:

> Westmark argues that it presented sufficient evidence that Burien interfered with its business expectancy for an improper purpose and by improper means. Specifically, Westmark argues that substantial evidence supported the inference that Burien singled out Westmark's project because it was an apartment building and because of pressure from a local politician (improper purpose) and improperly delayed review of the project (improper means). We affirm the trial court because, viewing the evidence in a light most favorable to Westmark, **there was substantial evidence from which the jury could conclude that Burien acted for an improper purpose or by improper means**.

*Id*. at 556 (emphasis added).

Obviously, the facts supporting the intentional interference with business expectancy claim are the same operative facts that underlie the substantive due process claim. Moreover, it is the arbitrariness and illegitimate purpose that supports the similar legal theories of both the intentional interference claim and the substantive due process claim.

PLAINTIFFS' MOTION FOR ATTORNEYS FEES
(C08-1727 RSM) - 7

GROEN STEPHENS & KLINGE LLP
10900 NE 8th Street, Suite 1325
Bellevue, WA 98004
(425) 453-6206

**B.    There are no Special Circumstances that would Render an Award Unjust**

The Supreme Court has explained that although an award of fees under § 1988 is discretionary, the prevailing party "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley*, 461 U.S. at 429; *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402 (1968).

The Ninth Circuit states:

> We have interpreted this statement [in *Hensley*] to mean that a court's discretion to deny fees under § 1988 is **very narrow** and that **fee awards should be the rule** rather than the exception.

*Herrington v. County of Sonoma*, 883 F.2d 739, 743 (9th Cir. 1989) (quoting *Ackerley Communications, Inc. v. City of Salem*. 752 F.2d 1394, 1396 (9th Cir. 1985), *cert. denied*, 472 U.S. 1028 (1985)) (emphasis added).  Moreover, the Ninth Circuit has been clear that the

> defendant has the burden of showing special circumstances warrant a denial of fees, and the defendant's showing must be a strong one.

*Id*. at 744 (citations omitted); *see also Saint John's Organic Farm v. Gem County Mosquito Abatement Dist.*, 574 F.3d 1054, 1064 (9th Cir. 2009) (denial of fees on basis of special circumstances is "extremely rare").

In the present case, there are no special circumstances that would warrant denial of fees.  For example, the fact that Westmark had the financial ability to pay its attorneys is not a special circumstance warranting denial of fees.  In *Herrington,* the Ninth Circuit reaffirmed that "the plaintiff's financial resources and access to counsel are **not valid reasons** to deny fees under § 1988." *Herrington*, 883 F.2d at 743 (emphasis added).  The Court noted that its position is consistent with other circuits.  *Id*.

PLAINTIFFS' MOTION FOR ATTORNEYS FEES
(C08-1727 RSM) - 8

GROEN STEPHENS & KLINGE LLP
10900 NE 8th Street, Suite 1325
Bellevue, WA 98004
(425) 453-6206

Nor is Westmark's motivation for bringing the lawsuit relevant.  Burien might be tempted to argue that Westmark was motivated to recover its financial losses, rather than promote a constitutional right, and that this motivation is a special circumstance warranting denial of fees.  But again, the Ninth Circuit has already rejected that argument.  *See Herrington*, 883 F.2d at 744-45.  One of the key congressional purposes of enacting § 1988 was to encourage voluntary compliance with the Constitution by local governments.  That purpose is furthered regardless of whether Westmark was motivated by its own desire to be compensated.  Indeed, the more successful Westmark was in securing compensatory damages, the more encouraged Burien should be to not make the same mistake in the future.

> The County also contends that a fee award is unjust because the Herringtons were motivated to sue primarily by an expectancy of personal financial gain rather than a desire to promote constitutional rights and because the Herringtons, rather than the public at large, are the main beneficiaries of the success of their lawsuit.  We previously held that these factors do not suffice to render a fee award unjust.  In *Ackerley*, we reasoned that public interests are advanced by civil rights actions even when the plaintiff is the main beneficiary of the suit and financial gain is the primary motive because a major goal of § 1988, **encouraging voluntary compliance** with the Constitution by government entities, **is furthered regardless of these factors**.

*Herrington*, 883 F.2d at 744-45 (internal citations omitted) (emphasis added).

The same is true in Westmark's case.  Although Westmark was certainly motivated by the desire to recover its losses, Burien should nevertheless be encouraged to avoid future attempts to wield its regulatory power in a manner that seeks to improperly thwart or delay projects, or to appease local politicians, or to improperly keep "apartment people" out of the City.  The land use regulatory power must be used to advance *legitimate* government objectives in order to be constitutional.  It is certainly hoped that Burien officials have learned that lesson and will be stimulated to do a better job complying in the future.

PLAINTIFFS' MOTION FOR ATTORNEYS FEES
(C08-1727 RSM) - 9

GROEN STEPHENS & KLINGE LLP
10900 NE 8th Street, Suite 1325
Bellevue, WA 98004
(425) 453-6206

Nor can Burien claim that there is no public benefit resulting from this case. Stimulating future voluntary compliance is certainly an important public benefit, *and a recognized congressional purpose. Ackerley Communications*, 752 F.2d at 1397. But even beyond this, there are other transcending social and economic benefits. As stated by the Ninth Circuit:

> The fact that the party who initiated the action is the primary beneficiary of its own success is not, however, a valid reason for denying fees under section 1988. As we stated in *Seattle School District* [*No. 1 v. State of Washington*, 633 F.2d 1338 (9th Cir. 1988)], "The congressional purpose in providing attorney's fees was … *to stimulate voluntary compliance with the law*." Thus there are public interest considerations that transcend the conferring of a financial benefit on a prevailing party. As the district court itself noted, "The benefit conferred by the decision in this case is not a trivial one, and is theoretically of benefit to all the inhabitants of Multnomah County and the City of Salem."

*Id.* (italics by the court; internal citations omitted).

Likewise, in addition to future voluntary compliance, the public benefit of Westmark's case is not a trivial one. The power to regulate land use is one of the most important and far-reaching powers of a local government. It touches the lives of all residents. It affects where, and how, people live. As the Ninth Circuit has often recognized, land use regulation is a "sensitive area of social policy." *Sinclair Oil Corp. v. County of Santa Barbara*, 96 F.3d 401, 409 (9th Cir. 1996) (quoting *Kollsman v. City of Los Angeles*, 737 F.2d 830, 833 (9th Cir. 1984) *cert. denied*, 469 U.S. 1211 (1985)). In the present case, this lawsuit clears the way for the Emerald Pointe apartment project to be built and for new apartment renters to be able to live in Burien who might not otherwise be able to be find a suitable apartment in that City.

Burien might argue that it is inequitable for Burien to pay attorney's fees when it has already paid an exceptionally high trial court judgment of approximately $10.7 million in

PLAINTIFFS' MOTION FOR ATTORNEYS FEES
(C08-1727 RSM) - 10

GROEN STEPHENS & KLINGE LLP
10900 NE 8th Street, Suite 1325
Bellevue, WA 98004
(425) 453-6206

delay damages.  The substantial amount of the judgment, however, is not a special circumstance, nor does it cut against Westmark's equitable standing.  Rather, it supports an award of attorney's fees.

> [T]he basic purpose of a § 1983 damages award should be to compensate persons for injuries caused by the deprivation of constitutional rights.

*Farrar*, 506 U.S. at 112 (quoting *Carey v. Piphus*, 435 U.S. 247, 254 (1978)).  Obviously, this congressional purpose of securing compensatory damages has been achieved.  Unlike other cases where only nominal or *de minimis* damages are achieved, the substantial degree of success by Westmark supports a reasonable fee award.

> Indeed, "the most critical factor" in determining the reasonableness of a fee award "is the degree of success obtained."

*Id*. at 114 (quoting *Hensley*, 461 U.S. at 436).  In contrast to Westmark's case, attorney's fees in *Farrar* were denied where the plaintiff sued for $17 million and after many years of litigation received only $1.  The mere technical victory with *de minimis* damages did not warrant a fee award.

Westmark's success is far more than a technical victory, and this success is recognized by the Supreme Court as a critical factor to determine the reasonableness of a fee award.  This is also consistent with the congressional purpose of stimulating voluntary compliance.  Indeed, it would be foolish for Burien to ignore such a large damages award and to fail in the future to better exercise its regulatory power in furtherance of legitimate regulatory objectives.

Finally, it should be noted that this was a high risk case for Westmark.  The litigation was filed in 1996 and was not concluded in the state courts until 2008, *twelve years later*.

PLAINTIFFS' MOTION FOR ATTORNEYS FEES
(C08-1727 RSM) - 11

GROEN STEPHENS & KLINGE LLP
10900 NE 8th Street, Suite 1325
Bellevue, WA 98004
(425) 453-6206

Along the way, Westmark had to prepare for trial three separate times (1998, 2004, and 2006), and had to win two appeals before the state appellate courts. Throughout the litigation there were numerous motions, substantial discovery, and complex facts to be presented through witnesses and documentary evidence. The trial itself lasted approximately six weeks with numerous witnesses and exhibits. To be sure, this lawsuit was no slam dunk, and no sure bet.

At bottom, this case is far from being a case where at the outset of litigation, the plaintiff had a high likelihood of success. Indeed, the likelihood of *any success* was always in jeopardy until the day the jury verdict came in, and even until the conclusion of all appeals. Accordingly, there is no equitable basis to claim a special circumstance justifying denial of Westmark's attorney's fees based on Westmark's high likelihood of success. Indeed, after years of litigation, it would be quite remarkable for Burien to even attempt to argue that Westmark actually had such a high likelihood of success that it shouldn't even be entitled to attorney's fees.

As the prevailing party, and under *Maher v. Gagne*, Westmark is entitled to its reasonable attorney's fees.

> Attorney's fees under Section 1988 are thus not only an added burden to encourage voluntary compliance, but **an entitlement** to a prevailing party which encourages and facilitates access to the courts. Section 1988 was enacted for the very purpose of influencing governmental entities to make thoughtful efforts to avoid civil rights violations.

*Ackerley Communications*, 752 F.2d at 1398 (emphasis added).

**C.  Segregation and Determination of Reasonable Attorneys Fees**

The Declaration of John M. Groen In Support of Westmark's Calculation of Attorney's Fees is filed with this motion. That declaration sets forth the protocol followed to segregate recoverable time from unrecoverable time.
PLAINTIFFS' MOTION FOR ATTORNEYS FEES
(C08-1727 RSM) - 12

GROEN STEPHENS & KLINGE LLP
10900 NE 8th Street, Suite 1325
Bellevue, WA 98004
(425) 453-6206

The 17 years of litigation are broken down into four phases. The first phase represents the time during the original filing of the lawsuit until the apparent settlement right before trial in 1998. Phase Two represents the time attempting to enforce the settlement. Phase Three is the time when the original claim was re-instated and the case was brought to trial in 2005 on the intentional interference claim. This phase concludes when the Washington Supreme Court denied further review. Phase Four is the litigation in this Court seeking to collect attorneys fees.

Within these four phases, John Groen's declaration then breaks out smaller time periods and provides a corresponding exhibit with a spreadsheet and the relevant billing records for that time period. The billing records show the handwritten notations of whether each time entry is claimed or not. The spreadsheet shows the entries claimed for reimbursement, each timekeeper, and the corresponding billing rate. The spreadsheet also provides the total fees claimed for that time period.

As mentioned, the general protocol was to only seek reimbursement for the time related to the substantive due process claim and the intentional interference claim. Likewise, time expended on matters related to King County as a defendant are excluded and not claimed. To avoid duplication or excessive billing, all paralegal time was excluded. Time related to client communications, administrative matters, and similar entries are generally excluded. The Declaration of John M. Groen provides additional detail on the protocol and the rigorousness that was employed to exclude non-recoverable time.

**D.      Interest Adjustment to Compensate for Lengthy Delay in Recovering Fees**

Clear Supreme Court precedent establishes that a court may make an adjustment to an award of attorney's fees under 42 U.S.C. § 1988 in order to properly compensate the

PLAINTIFFS' MOTION FOR ATTORNEYS FEES
(C08-1727 RSM) - 13

GROEN STEPHENS & KLINGE LLP
10900 NE 8th Street, Suite 1325
Bellevue, WA 98004
(425) 453-6206

prevailing party for the delay in payment of said fees. *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010); *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 282 (1989). In *Jenkins,* the Supreme Court squarely held that an enhancement of the § 1988(b) fee award for a delay of payment via an upward lodestar adjustment is appropriate in determining a reasonable attorney's fees. *See Jenkins*, 491 U.S. at 274.

In order to properly adjust a fee award for lengthy delays, some courts have used current market-value rates—that is, these courts have applied a present rate to all of the time expended over the life of the case. *See e.g. Gates v. Deukmeian*, 987 F.2d 1392, 1407 (9th Cir. 1992). However, while it could be argued that this method is the simplest and most convenient for the court to handle, such an argument does not make it "more economically rational." *Chalmers v. City of Los Angeles*, 676 F. Supp. 1515, 1527 (C.D. Cal. 1987). Indeed, many decisions have opted instead to use the second alternative, that is utilizing "market interest rates, usually the prime rate, to historic billing rates, **as a more accurate measure** than current rates of the lost time-value of money, both from inflation and from the loss of use of the money, due to a delayed payment of the statutory fee." Schwartz & Kirklin, Sec. 1983 Litig. Stat. Attorney Fees § 7.05—Upward Adjustment for Delay in Fee Payment.[2] (emphasis added).

For example, in *Chalmers,* the court utilized an "adjusted historic billing rate" approach, utilizing the historic market rate of interest, as compensation for both inflation and the loss of use of the money over the period of the delay in payment of a statutory fee. 676 F.Supp. at 1515. When selecting the appropriate rate multiplier, the court adjusted by increasing the fee for each year, based on the use of historic U.S. Treasury bill rates. *Id.*

---

[2] Schwartz & Kirklin cite numerous sources to support this statement which are too voluminous to incorporate here.

PLAINTIFFS' MOTION FOR ATTORNEYS FEES
(C08-1727 RSM) - 14

GROEN STEPHENS & KLINGE LLP
10900 NE 8th Street, Suite 1325
Bellevue, WA 98004
(425) 453-6206

1    Ultimately, "the adjusted historic billing rate approach **is the more economically**

2    **rational method**" when upwardly adjusting a lodestar attorney's fee award. *Chalmers,* 676

3    F. Supp. at 1527 (emphasis added); *see also* Schwartz & Kirklin, Sec. 1983 Litig. Stat.

4    Attorney Fees § 7.05.

5    In the present case, the Court is asked to make an upward adjustment based on the

6    United States Treasury Bill rates as set forth in the Declaration of W. Forrest Fischer.

7    While many cases involve upward adjustments for only several years of delay, the

8    delay in the present case is exceptionally long. Accordingly, the upward adjustment is fully

9    warranted. Westmark does not seek an upward adjustment for the time in Phase Four of the

10   litigation after 2008. Westmark also does not seek interest for 2013, but stops calculation of

11   interest at the end of 2012.

12   **E.    Summary of Fee Calculation**

13   Taking the data from the spreadsheets and Declaration of W. Forrest Fischer, it is

14   determined that a total of 8,662 hours were expended in this litigation. Of those hours,

15   Westmark is claiming reimbursement for 6,621 total hours. In applying the reasonable hourly

16   rates for all the different timekeepers, these total hours compute to a total award of

17   $1,410,610.00. Using the T-Bill rates, an upward adjustment of $606,055.43 is requested to

18   bring the total award of attorneys fees to $2,016,665.43. A proposed order is attached hereto

19   as Appendix B.

20   Westmark reserves the opportunity to make final adjustments for time expended on

21   this fee motion in August, September, and through final briefing and argument on this motion.

PLAINTIFFS' MOTION FOR ATTORNEYS FEES
(C08-1727 RSM) - 15

GROEN STEPHENS & KLINGE LLP
10900 NE 8th Street, Suite 1325
Bellevue, WA 98004
(425) 453-6206

For all the foregoing reasons, it is respectfully requested that the Court award Westmark a reasonable attorneys' fee award of $2,016,665.43.

Executed by me this 2nd day of October, 2013 at Bellevue, Washington.

       *s/ John M. Groen*
John M. Groen, WSBA #20864

Groen Stephens & Klinge LLP
10900 NE 8th Street, Suite 1325
Bellevue, WA 98004
t: 425.453.6206, f: 425.453.6224
e: groen@GSKlegal.pro
Attorneys for Plaintiffs

PLAINTIFFS' MOTION FOR ATTORNEYS FEES
(C08-1727 RSM) - 16

GROEN STEPHENS & KLINGE LLP
10900 NE 8th Street, Suite 1325
Bellevue, WA 98004
(425) 453-6206

**CERTIFICATE OF SERVICE**

I hereby certify that on October 2, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Kenneth W. Harper
kharper@mjbe.com

Kirk A. Ehlis
kehlis@mjbe.com

Dated: October 2, 2013

*s/ John M. Groen*
John M. Groen, WSBA #20864
Groen Stephens & Klinge LLP
10900 NE 8th Street, Suite 1325
Bellevue, WA 98004
t: 425.453.6206
f: 425.453.6224
e: groen@GSKlegal.pro

PLAINTIFFS' MOTION FOR ATTORNEYS FEES
(C08-1727 RSM) - 17

GROEN STEPHENS & KLINGE LLP
10900 NE 8th Street, Suite 1325
Bellevue, WA 98004
(425) 453-6206