The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WESTMARK DEVELOPMENT CORPORATION, a Washington corporation, and TRIZEC INVESTMENT CORPORATION, a Washington corporation, a Washington corporation,<br><br>Plaintiffs,<br>vs.<br><br>CITY OF BURIEN, a municipal corporation,<br><br>Defendant. | **NO. C08-1727-RSM**<br><br>BURIEN'S RESPONSE TO PLAINTIFFS' MOTION FOR ATTORNEYS FEES |

**MENKE JACKSON BEYER, LLP**
807 North 39th Avenue
Yakima, WA 98902
Telephone (509)575-0313
Fax (509)575-0351

Without reaching the merits of the substantive due process claim the Court may determine that special circumstances render a fee award unjust. If any fees are awarded they must be limited to those claims that "involved similar facts, legal theories, and relief sought as the substantive due process claim." Dkt. #82 at 4. Westmark has the burden of supporting its claim to fees. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

Special circumstances indeed exist in this matter. There is no link between intentional interference with business expectancies and due process that survives a "close examination of the nature of the claims and the relationship between those claims…." *Smith v. Robinson*, 468 U.S. 992, 1007 (1984). The peculiar methodology used by Westmark to apportion time to various fee bills blurs this inquiry.

**I. Special circumstances render a fee award unjust.**

Westmark's sole tie to fees under 42 U.S.C. § 1988 is substantive due process. In this land use dispute Westmark has no constitutionally recognized fundamental rights. There is no demonstrated protectible property interest and no basis for municipal liability under *Monell*. There is evidence of a legitimate governmental objective for Burien's actions and, correspondingly, a failure by Westmark to show that Burien flunks the "shocks the conscience" standard.

Fees under § 1988 should not be utterly disconnected from the advancement of constitutionally-protected rights. Westmark's fee claim magnifies substantive due process in land use beyond any reported case. Westmark's argument for fees is a mere "incantation," which, because of the unconfined nature of substantive dues process, could create a basis for fees "in almost every case." *Smith*, 468 U.S. at 1003. No authority shows that Congress intended fee-shifting to operate like this.

RESPONSE TO MOTION FOR FEES (C08-1727-RSM) - 1

The test for special circumstances inquires into the purposes of § 1988 and whether the balance of equities favors or disfavors the denial of fees. *Mendez v. County of San Bernardino*, 540 F.3d 1109, 1126 (9th Cir. 2008). This exception applies "only in unusual cases." *Mendez*, 540 F.3d at 1126.

A recent Ninth Circuit panel (including Judge Tallman) upheld a decision to deny attorneys' fees under the Americans with Disabilities Act. *Molski v. Conrad's La Canada Restaurant*, 479 F. App'x. 771, 772 (9th Cir. 2012). Following remand, the trial court justifiably explained how a fee award would be inequitable and was affirmed in a second appeal. In *Saint John's Organic Farm v. Gem County Mosquito Abatement District*, 574 F.3d 1054, 1064 (9th Cir. 2009), Judge Tallman concurred to "emphasize that the standard of review for an award under this doctrine remains the traditional abuse of discretion standard." The Ninth Circuit vacated a denial of attorneys' fees on the grounds that the trial court misapprehended the role of pollutant discharge permits under the Clean Water Act. *Resurrection Bay Conservation Alliance v. City of Seward*, 640 F.3d 1087, 1094 (9th Cir. 2011). The court in *Resurrection Bay* closely examined the substantive law and evaluated whether a fee award would further the Clean Water Act's purpose.

In just such a way, this Court may determine, within its discretion, that the "special circumstances" exception applies to this unusual case. Considering the first prong, an award of fees would not further the purposes of § 1988. Westmark's demand for fees has been joined with a tactical retreat from the merits of the due process claim. One of Westmark's early steps in the fee litigation was to declare its due process claim moot. Dkt. #64 at 5. Westmark's due process claim may not be insubstantial under *Hagans*, but Westmark errs in implying that the minimal *Hagans* test is the equivalent of showing a furtherance of § 1988.

MENKE JACKSON BEYER, LLP
807 North 39th Avenue
Yakima, WA 98902
Telephone (509)575-0313
Fax (509)575-0351

Dkt. #112 at 5. Subjecting Burien to § 1988 liability actually subverts the purpose of a fee award because no federal law guards against a developer's economic losses due to delay.

The "balance of equities" prong of the special circumstances test also favors denial of fees. This inquiry reveals the poor fit of substantive due process in development cases. Westmark's theory was delay by Burien in making an intermediate decision under Washington's environmental review laws, Chapter 43.21C RCW ("SEPA"). Burien contended that Westmark caused its own delay due to its unwillingness to prepare an EIS under an earlier SEPA determination of King County. After years of jockeying by both parties, which included satellite litigation on other issues, the propriety of Burien's SEPA determination was affirmed. Dkt. #63, Ex. H at 51. The hearing examiner agreed that an EIS was required. Because Burien's SEPA decision was correct, it is inequitable to now award fees to Westmark in the guise of due process relating to the same delay. Although Westmark argues delay, rather than the type of SEPA decision made, there has never been a finding by anyone -- judge, jury, or hearing examiner -- that Burien erred in sticking to the EIS requirement. Westmark is free to now call its due process claim moot, but this means that Westmark is seeking to invoke *Maher* on a truncated record, which Westmark itself *caused to be truncated*. Dkt. #63 at ¶¶ 7-13. This is literally unprecedented.

The jury never knew of the hearing examiner's conclusion regarding an EIS. *Westmark v. Burien*, 140 Wn. App. 540, 556 (2007). Neither party can know what effect this evidence might have had at trial, but it goes to the core issue of the *Mendez* equity prong. Westmark cannot untangle its theory of SEPA-related delay from its other delay-based claims such as negligent misrepresentation, which had nothing to do with SEPA. A fee award here would apply § 1988 "woodenly without consideration of the underlying

RESPONSE TO MOTION FOR FEES (C08-1727-RSM) - 3

**MENKE JACKSON BEYER, LLP**
807 North 39th Avenue
Yakima, WA 98902
Telephone (509)575-0313
Fax (509)575-0351

factors which generated it" because it would allow a large fee award in the absence of finding that Burien did anything wrong under SEPA at all. *Buxton v. Patel*, 595 F.2d 1182, 1184 (9th Cir. 1979), *overruled on other grounds, Hamner v. Rios*, 769 F.2d 1404, 1407 (9th Cir. 1985).

**II. The "similar facts and legal theories" inquiry of *Smith v. Robinson* is not met.**

Westmark's over-length brief never cites *Smith v. Robinson*. Westmark asserts that "obviously" the intentional interference claim is based on the same facts as the due process claim. Dkt. #112 at 7. This may be true for supplemental jurisdiction (*Hagans* + "common nucleus of operative fact"). But Westmark cannot meet *Smith*'s requirement of a "closer examination of the nature of the claims" merely by conflating *Smith* with supplemental jurisdiction. *See Smith*, 468 U.S. at 1007.

The tests for "substantiality" and "commonality" are necessary but not sufficient to invoke *Maher* fee-shifting. *Smith*, 468 U.S. at 1006-07. *Smith* rejected the view that a prevailing party who asserts substantial but unaddressed constitutional claims is necessarily entitled to fees "without qualification." *Id*. at 1006. Congressional purpose in allowing fee awards for unaddressed constitutional claims is not furthered when the fee-bearing claim is not "reasonably related to the plaintiff's ultimate success." *Id*. at 1007. Where a fee-bearing claim was "virtually identical" to a statutory claim that did not bear fees, fee-shifting was appropriate. *Id*. at 1009. If different claims are "based on different facts and legal theories" and a plaintiff "prevail[s] only on a non-fee claim," Congressional policy is not implicated "simply by including" a general due process claim of unfairness. *Id*. at 1015. "It is unlikely that Congress intended such a result." *Id*. at 1016.

RESPONSE TO MOTION FOR FEES (C08-1727-RSM) - 4

MENKE JACKSON BEYER, LLP
807 North 39th Avenue
Yakima, WA 98902
Telephone (509)575-0313
Fax (509)575-0351

Cases satisfying the *Smith* standard show congruence between fee- and non-fee-bearing theories. Most involve a discrete statute or regulation that constitutes a fixed target for the plaintiff's cause. If the statute or regulation is invalidated by a decision on a non-fee theory, the *Smith* test will usually be met because a court will have no need to address the constitutional claims. This is the context out of which *Maher* itself arose. *Maher*, 448 U.S. at 130-31 ("wholly statutory" non-civil-rights challenge based on Social Security Act).

In *Smith*, there was a plausible context for fee-shifting because of the legal and factual symmetry of the fee and non-fee theories. *Smith*, 468 U.S. at 1003, 1012-13 (statutory claim based on Education of the Handicapped Act). This pattern recurs in the challenge to the Holocaust Victim Insurance Relief Act in *Gerling* and the discriminatory voting scheme in *Seals*. *Gerling Global Reinsurance Corp. v. Garamendi*, 400 F.3d 803, 806 (9th Cir. 2005) (foreign affairs preemption); *Seals v. Quarterly County Court*, 562 F.2d 390, 393 (6th Cir. 1977) (statutory claim under Voting Rights Act).

**A. Westmark's tort claim is *legally* unlike federal substantive due process.**

Westmark hedges against the dissimilarity of its claims by requesting only fees that it attributes to interference with business expectancy. This tort thus becomes the sole foundation for fees. But Westmark's motion contains no section on the legal *relationship* between its fee and non-fee theories.

*Smith*'s "reasonably related" formula is hard for Westmark to meet. *Smith*'s caution against mere incantations is apt. The tort of intentional interference with business expectancy is not like substantive due process. There is nothing "tightly intertwined" about the law of these theories. *Giovanni Carandola, Ltd. v. City of Greensboro*, 258 F. App'x. 512, 517 (4th Cir. 2007).

RESPONSE TO MOTION FOR FEES (C08-1727-RSM) - 5

MENKE JACKSON BEYER, LLP
807 North 39th Avenue
Yakima, WA 98902
Telephone (509)575-0313
Fax (509)575-0351

Any action under § 1983 depends on vindication of federal constitutional or statutory rights. *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985). Westmark's tort claim had no similar requirement. The Constitution's due process guarantees apply only when protected liberty or property interests are at stake, which, in this context, stems from a truly mandatory development entitlement under state law. *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 760 (2005). There is no parallel in tort. Delay in a permit may run afoul of due process only where a plaintiff meets the "extremely high" burden of disproving all legitimate reasons for a municipal decision. *Building 11 Investors, LLC v. City of Seattle*, 912 F. Supp. 2d 972, 980 (W.D. Wash. 2012). Westmark has never disproved the legitimacy of Burien's requirement of an EIS, which was affirmed by the hearing examiner. Even an outright violation of SEPA by Burien would not have been sufficiently arbitrary in the constitutional sense. *Shanks v. Dressel*, 540 F.3d 1082, 1088-89 (9th Cir. 2008). At trial, Westmark relied on tort remedies available without any comparable limitations. *Westmark*, 140 Wn. App. at 556-64. An "arbitrary and capricious" permit delay claim under Ch. 64.40 RCW would have at least some degree of commonality with substantive due process, but no such claim proceeded to trial. Dkt. #121, Ex. A at 21. This Court has noted this distinction previously. *See* Dkt. #49 at 2 ("not congruent"); Dkt. #71 at 7 ("lower (negligence) showing").

Similarly, *respondeat superior* is tort law, but a municipality cannot be held liable on this basis under § 1983. An act of a municipal legislative body may be an act of the municipality. *Pembaur v. Cincinnati*, 475 U.S. 469, 480 (1986). But causation is also required. Westmark has never shown that any Burien official acting within his or her decisionmaking authority *caused a constitutional tort* by implementing an official policy of

RESPONSE TO MOTION FOR FEES (C08-1727-RSM) - 6

MENKE JACKSON BEYER, LLP
807 North 39th Avenue
Yakima, WA 98902
Telephone (509)575-0313
Fax (509)575-0351

Burien to delay SEPA. No such policy was ratified, either. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). Westmark's tort claims were alleged against Burien generally. Agency was assumed. Westmark argued to the jury about *Burien's* delay, *Burien's* interference, *Burien's* motives, and *Burien's* means. Dkt. #59-7 at 9-10.

Westmark's use of *Maher* obliterates *Monell* while simultaneously advancing substantive due process in local land use disputes. The *Smith* test of legal interconnectivity is not met.

**B. The tort claim's *facts* are not similar to the substantive due process claim.**

At trial Westmark argued its theory of SEPA delay without pointing to any official policy of Burien. *Id*. Here, Westmark relies on a moratorium on multi-family residences and an interlocal agreement with King County. Neither expressed any policy of Burien regarding SEPA review for Westmark's vested project. Dkt. # 63, Ex. K-N. Westmark's oft-repeated "apartment people" comment is only a paraphrase of Westmark's own lawyer and cannot be attributed to any actual Burien official whomsoever. *See* Dkt. #57-2 at 23 ("people oppose apartments"). Westmark's reliance on this tagline shows that circumstantial evidence may work well for tort jury trials, but not for *Monell* purposes. Again, the Court has noted this problem. Dkt. #71 at 8-11.

Westmark's state court tort claims were not limited to arguments about SEPA delay. Dkt. # 59, Ex. E. Westmark's hedge of claiming fees relating only to intentional interference is illusory. Westmark's trial presentation extensively addressed the parties' failed settlement, for which there is no commonality with substantive due process at all. Dkt. #59-7 at 9, 19. Westmark pressed its theories collectively as part of the "bad acts" of Burien. Once commingled in argument before the jury with a general verdict, it is now

RESPONSE TO MOTION FOR FEES (C08-1727-RSM) - 7

**MENKE JACKSON BEYER, LLP**
807 North 39th Avenue
Yakima, WA 98902
Telephone (509)575-0313
Fax (509)575-0351

impossible to disentangle them in order to trace factual similarity between intentional interference and due process.

Westmark's case at trial asked the jury for a determination of whether, on a more probable than not basis, Burien had various disparate tort liabilities. The context was a land use dispute over environmental review requirements *and* subsequent communications dealing with settlement. Westmark relied upon circumstantial evidence ("apartment people") to show impropriety. Westmark never showed the absence of any rational relationship between an EIS and a legitimate government interest in full disclosure of environmental impacts. Westmark itself ran risks of delay as a consequence of the impasse. Burien never denied Westmark's application for the project. *See Herrington v. County of Sonoma*, 834 F.2d 1488, 1494 (9th Cir. 1987).

At a basic factual level this does not equate to a showing that Burien could have had no legitimate reason for requiring an EIS. *See, e.g., North Pacifica, LLC .v City of Pacifica*, 526 F.3d 478, 485 (9th Cir. 2008) (requiring multiple environmental impact reports not constitutionally arbitrary); *Baumgardner v. Town of Ruston*, 712 F. Supp. 2d 1180, 1204-05 (W.D. Wash. 2010) (additional SEPA documentation could have advanced legitimate purpose). Westmark's trial case, based on delay for allegedly improper purposes, was built on Washington tort law. Dkt. #30 at 16-17 (interference claim "was modeled after *Pleas v. City of Seattle* [citation omitted]"). Muddled SEPA wrangling is factually unlike denial of a non-discretionary building permit by a city council. *See Richter v. City of Des Moines*, 2013 WL 4406689 at *2 (9th Cir. 2013) (distinguishing *Bateson*, finding compliance with environmental codes "unquestionably a legitimate government interest"); *Samson v. City of Bainbridge Island*, 683 F.3d 1051, 1059-60 (9th Cir. 2012) (*Bateson* "idiosyncratic

RESPONSE TO MOTION FOR FEES (C08-1727-RSM) - 8

MENKE JACKSON BEYER, LLP
807 North 39th Avenue
Yakima, WA 98902
Telephone (509)575-0313
Fax (509)575-0351

decision"); *Piefer Constr. v. Tacoma*, 2010 WL 3502562 at *4 (W.D. Wash. 2010) (delay was example of disagreement "frequent in planning disputes").

### III. The fee claim methodology is unsound.

Westmark relies on fee bills annotated "0" or "50" or "100" based on "billing judgment." Twenty-six different lawyers are included in the fee request (one of whom seeks $11,611 for his fee declaration alone). Dkt. #119 at 9. Based on the annotations, Westmark claims 6,621.65 hours out of total time of 8,662 hours (or 76.4%). Dkt. # 114 at 2. The main reason certain fees are not claimed is the role of King County as a former co-defendant. Dkt. #113 at 5.

It is impossible to apply objective criteria to the 753 pages of fee bills and relate Westmark's allocation to *Smith*. The largest period of time, Phase 3 -- the jury trial -- is claimed at 83.03%. Dkt. #114 at 2. "Billing judgment" does not explain how this 83% relates to intentional interference as opposed to negligent misrepresentation, which Westmark concedes is not recoverable at all under *Smith*. Dkt. #112 at 5; #113 at 6. The billing judgment allocations are arbitrary. Dkt. #121 at ¶¶ 28-30. Nothing explains how these allocations justify recovery under the "closer examination" test of *Smith*.

Scrutiny of the fee bills offers no help. References to due process appear in the bills at the time the due process claim was dismissed (and reinstated) in 1997 but scarcely reappear until 2007, well after trial was done. *See e.g.,* Dkt. #39-1; Dkt. #113-4 at 11-20; Dkt. #113-6 at 6-25; Dkt. #113-7 at 4-11; Dkt. #113-20 at 15; Dkt. #121 at ¶ 22. There are apparently no references to *Monell* until 2008. Dkt. #113-22 at 15. The total for work in state court described as explicitly either substantive due process or § 1983 is less than $16,000. Dkt. #121 at ¶ 23.

RESPONSE TO MOTION FOR FEES (C08-1727-RSM) - 9

MENKE JACKSON BEYER, LLP
807 North 39th Avenue
Yakima, WA 98902
Telephone (509)575-0313
Fax (509)575-0351

The problem with Westmark's allocation for *Smith* purposes is illustrated in the claim for Phase 2 fees. By Westmark's own reckoning, this phase had nothing to do with due process and only dealt with the settlement agreement. Dkt. #113 at 2. But Westmark claims it anyway and thereby undermines any consistency in its allocation methodology. Dkt. #113 at 18-19. Phase 2 had zero relation to due process. Phases 3 and 4 also injected the theory of delay due to misrepresentation and settlement agreement breach. After Phase 1, the interference claim was intertwined with negligent misrepresentation. Westmark cannot show that its allocation of time based on billing judgment yields a fee award on only the interference claim. Dkt. #121 at ¶¶ 28-31. *See Cotton v. City of Eureka*, 889 F. Supp. 2d 1154, 1176 (E.D. Cal. 2012) (burden on prevailing party, district court must review fee claim in context of the case).

Moreover, the *Smith* test operates on a different level than the basis upon which Westmark performed its allocation. For all that one can discern, Westmark's motion consists of fee entries reduced by the involvement of King County-related work. There are no criteria stated in the motion that are consistently applied to allocate fees to "only those claims that involved" similar facts and law. Dkt. #82 at 4. Westmark's key problem under *Smith* may not be solvable. Indeed, the allocation inadvertently bolsters Burien's argument that this case warrants the "special circumstances" exception of *Mendez*.

The fee allocation is flawed for other reasons. Dkt. #121 at ¶¶ 28-31, Ex. M, N.

**A.    Westmark is not entitled to an upward adjustment in fees.**

A delay adjustment may arise when a lawyer is not paid by a client in the course of representation. *See, e.g., Chalmers v. City of Los Angeles*, 676 F. Supp. 1515, 1525 (C.D. Cal. 1987). This is not the case here. To the contrary, the record evidences "the fact that

**MENKE JACKSON BEYER, LLP**
807 North 39th Avenue
Yakima, WA  98902
Telephone (509)575-0313
Fax (509)575-0351

Westmark had the financial ability to pay its attorneys." Dkt. #112 at 8, Dkt. #121 at Ex. K. The absence of any lost time value of money precludes a delay adjustment. Westmark cites no case of an upward delay adjustment where a party has paid its attorneys' fees as billed. Westmark's citation to *Gates v. Deukmejian*, 987 F.2d 1392, 1406 (9th Cir. 1992), in which counsel waited for a period of years to be compensated at all, is thus distinguishable.

Also, Westmark's interest calculations are in error. By analogy to the federal interest statute, 28 U.S.C. § 1961, the start date for any delay adjustment should be the date on which the entitlement to fees is secured, not the date of the merits judgment or the date the exact amount of fees is set. *See Kona Enterprises, Inc. v. Estate of Bishop*, 243 F.App'x. 274, 277 (9th Cir. 2007); Alan Hirsch & Diane Sheehey, *Awarding Attorneys' Fees and Managing Fee Litigation* 39 (Federal Judicial Center 1994). Westmark's fee entitlement has not yet been decided.

**B. Attorneys' fees were already awarded as an element of damages by the jury.**

Prior to the state court trial Westmark disclosed an expert's opinion as support for more than $2.8 million in out-of-pocket delay costs, including attorneys' fees, plus interest. Dkt. #121, Ex. B. Westmark argued that seven years of attorneys' fees should be recoverable as damages. *Id*., Ex. C at 3-4, Ex. D at 4-5. This litigation expense related to "*Westmark II*," which was limited in scope to the settlement agreement. *Id*., Ex. E, F, and G. The trial court was skeptical: "I've never had a jury decide lawyers' fees." *Id*., Ex. H at 207. Westmark argued that the fees were like any other damages and were awardable as such due to "the wrongful acts of Burien." *Id*. The trial court ruled that Westmark could seek attorneys' fees for "the settlement case, Westmark II case." *Id*., Ex. I at 484-87.

RESPONSE TO MOTION FOR FEES (C08-1727-RSM) - 11

MENKE JACKSON BEYER, LLP
807 North 39th Avenue
Yakima, WA 98902
Telephone (509)575-0313
Fax (509)575-0351

Westmark's damages expert testified that Westmark incurred $1,055,778 in costs of different types, including legal fees. *Id*., Ex. J at 2254, 2310-14. In a revised report, the attorneys' fees totaled $433,660.77. *Id*. at ¶ 12. Westmark argued that the jury should award it damages due to the delays associated with *Westmark II*. *Id*., Ex. L at 3821-22.

Here, Westmark seeks $216,195 in attorneys' fees for Phase 2. Dkt. #114 at 2. But at trial Westmark asked for delay-related out-of-pocket damages in the much greater amount of $1,055,778, which encompassed $433,660.77 worth of lawyer time prior to and following Phase 2. Burien is now in jeopardy of being held liable for the same fees twice. It is impossible to determine what the proper credit amount should be due to the general verdict form. Westmark does not appear to account for this problem anywhere in its motion.

## IV. Conclusion.

No federal interest would be served by a fee award in this case, including for work done in this court and on appeal. Dkt. #90. It would be an invitation to abuse. If the Court determines that special circumstances under *Mendez* do not exist, then a fee award should still be denied because the tort and due process claims involved distinctly different facts and legal theories. In no event should the Court allow any fees that have already been awarded as damages by the jury or make any increase due to delay.

DATED THIS 4th day of November, 2013.

        MENKE JACKSON BEYER, LLP
By: /s/ Kenneth W. Harper, WSBA #25578
        Attorneys for defendant City of Burien

RESPONSE TO MOTION FOR FEES (C08-1727-RSM) - 12

MENKE JACKSON BEYER, LLP
807 North 39th Avenue
Yakima, WA 98902
Telephone (509)575-0313
Fax (509)575-0351

# CERTIFICATE OF SERVICE

I hereby certify that on November 4, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System to which will send notification of such filing to the following:

>JOHN MAURICE GROEN
>Email: lhall@GSKonline.com, jgroen@GSKonline.com

and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

**NONE**

>s/KENNETH W. HARPER
>WSBA #25578
>s/ KIRK A. EHLIS
>WSBA #22908
>Attorneys for Defendant
>City of Burien
>Menke Jackson Beyer, LLP
>807 North 39th Avenue
>Yakima, Washington 98902
>Telephone: (509) 575-0313
>Fax: (509) 575-0351
>Email: kehlis@mjbe.com

RESPONSE TO MOTION FOR FEES (C08-1727-RSM) - 13

MENKE JACKSON BEYER, LLP
807 North 39th Avenue
Yakima, WA 98902
Telephone (509)575-0313
Fax (509)575-0351